UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

In re:                                                    Bankruptcy No. 08-30589
                                                          Chapter 7
Lonnie L. and Delores J. Lundstrom,

                    Debtors.
_____/

## MEMORANDUM AND ORDER

This matter is before the Court on the objection of Michael L. Wagner, the Chapter 7 trustee

assigned to this case, to the claimed exemptions of Debtors Lonnie L. Lundstrom and Delores J.

Lundstrom. The trustee objects to Debtors' valuation of their homestead, Debtors' exemption of

their mobile home under N.D.C.C. § 28-22-02(10), and Debtors' exemption of 15 horses.

The matter was heard by video conference on December 17, 2008.

### I. Factual Background

On June 12, 2008, Debtors filed a voluntary chapter 7 bankruptcy petition. On Debtors'

Schedule C, they claimed the real property at issue as exempt as their homestead pursuant to

N.D.C.C. §§ 47-18-01 and 28-22-02. They listed the value of the property at $80,000 and the value

of the claimed exemption at $63,265.27. They exempted their mobile home under N.D.C.C. § 28-

22-02(10). They did not list any horses as exempt, nor did they disclose ownership of any horses

on Schedule B. On Schedule D, Debtors listed the amount of the secured claim on their real

property owed to Starion Financial as $16,734.73.

The meeting of creditors was held on July 10, 2008. At the meeting, the trustee asked Debtor

Lonnie Lundstrom whether he had tried to sell the homestead property.[1] Lonnie Lundstrom

---

[1] Debtor Lonnie Lundstrom testified to this at the hearing on this matter.

responded that he was not interested in selling it, and that he had laughed at an acquaintance's offer

to buy the property for $750/acre[2] over coffee one day.

On July 24, 2008, Debtors filed an Amended Schedule B disclosing 15 horses valued at $200

each.[3]   Debtors also filed an Amended Statement of Financial Affairs, listing horses owned by

others but held by Debtors on their property.  These included one mare and one yearling held for

Tim Hoffman and 25 mares and one stallion held for Randy Schmidt.

The trustee filed an objection to the value Debtors placed on their homestead exemption on

August 8, 2008.  Debtors responded to the trustee's objection on August 28, 2008.

On September 23, 2008, Debtors filed amended schedules listing the value of the real

property at $105,000, and the value of the claimed exemption at $80,000.  They also amended the

value of the horses to $35 each and added the horses to their claimed exemptions.  Debtors also filed

an Amended Schedule D, listing two separate amounts owed to Starion Financial: $16,457 for the

purchase of the homestead and $3,120 for a "May 15, 2008 extension of original loan amt- $3,000

plus $120 interest."  On the same date, Debtors filed a motion to substitute their original attorney

with the attorney presently representing Debtors.

The trustee withdrew his objection to the valuation of Debtors' homestead property on

September 30, 2008, and he filed the objection to Debtors' exemptions presently before the Court

on October 23, 2008.

---

[2] This offer would total $120,000 for the entire property.

[3] At the hearing, counsel for both the trustee and Debtors referenced statements allegedly made by Debtor Lonnie Lundstrom about Debtors' horses at the meeting of creditors.  However, neither party offered any testimony or other evidence about Debtors' testimony regarding the horses at the meeting of creditors.  Argument by counsel is not evidence.  See Wittenburg v. American Exp. Financial Advisors, Ind, 464 F.3d 831, 838 (8th Cir. 2006).

2

At the hearing on the matter, Vincent Bitz, a real estate broker and auctioneer, testified that there would be "no problem" getting $120,000 for the property. Further, he would personally speculate on the property if it were available for that price.[4] He testified that it might be possible to sell the land for more than that, and that if he owned the property and were selling it, he would try to get between $140,000 and $150,000 for it. Bitz is not a licensed appraiser and did not provide a written appraisal on the property.

Wade Bachmeier, another real estate broker, also testified. Bachmeier sold Debtors 40 acres of the land at issue and signed a guaranty for Debtors' loan from Starion Financial. Bachmeier valued the land at $105,000 based on several factors including comparable land sales, accessibility, and productivity.

Debtor Lonnie Lundstrom testified that at the meeting of creditors, he told the trustee that he had laughed at his acquaintance's offer to buy the land for $750/acre not because of the price offered, but because he is not interested in selling the land regardless of the offer. He testified that the land is his home, and he has nowhere else to go. Lonnie Lundstrom testified that he used to have a drinking problem, and the land is his therapy. If not for the land, he said, he would go back to drinking.

Lonnie Lundstrom also testified that they currently own 15 horses, and they owned 15 horses on the day they filed for bankruptcy. When they filed, there were other horses on his property, but Debtors did not own them. He testified that Debtors' horses are worth nothing, and that people had to pay out of pocket to dispose of horses at a recent sale. When he was asked why the horses were

---

[4] Debtors stipulated at the hearing on the matter that the land is worth $750/acre or $120,000 total.

3

not listed in the original bankruptcy schedules, he testified that his attorney at the time knew they had horses and that the omission must have been an oversight on the attorney's part. When asked why he signed the petition if the horses were not listed, he stated that he had been out working in the rain, and he was cold, wet and hungry. He did not read the petition and instead relied on his attorney to have correctly prepared it.

In an unrelated state court action, Debtors filed a claim of exemption on December 20, 2007, listing horses valued at $2,500. Lonnie Lundstrom testified that his previous attorney filled this out and provided the value for the horses. Lonnie Lundstrom stated he did not tell the attorney that the horses were worth $2,500, and he does not know how the attorney arrived at this value.

Debtors listed 15 horses on Amended Schedule B filed on July 24, 2008, as worth $200 each, and in another Amended Schedule B filed on September 23, 2008 as worth only $35 each. When asked why the horses decreased in value between July and September, Lonnie Lundstrom testified that the horse killing plants have closed throughout the United States so the horses essentially have no value at all now.

Debtor Delores Lundstrom testified that the horses are her pets and her life.

## II. Discussion

At the time a debtor files a Chapter 7 petition, a bankruptcy estate is created which is comprised of all of the debtor's legal and equitable interests in property. 11 U.S.C. § 541(a)(1). Section 541(a)(1) of the Bankruptcy Code is a broad provision which encompasses all apparent interests of the debtor. Armstrong v. Peterson (In re Peterson), 897 F.2d 935 (8th Cir. 1990). Section 522(b)(2)(A) permits a debtor to exempt from the bankruptcy estate any property that is exempt under federal, state, or local law applicable on the date of the petition filing. 11 U.S.C. §

4

522(b)(2)(A).  North Dakota is among the majority of states that have chosen to "opt out" of the federal exemption scheme and limit its residents to the exemptions allowable under North Dakota law.  See N.D.C.C. § 28-22-17.

A debtor's exemptions are determined as of the time of the bankruptcy petition filing.  In re Peterson, 897 F.2d at 937.  Accordingly, courts focus only on the law and facts as they exist on the date of filing the petition.  Id.  The party objecting to a debtor's exemptions has the burden of proving that the exemptions are not properly claimed. Fed. R. Bankr. P. 4003(a).

A.    The Homestead

A homestead exemption is one of the exemptions available under North Dakota law. Section 28-22-02 of the North Dakota Century Code accords the head of family certain absolute exemptions from process, levy, and sale, among them "[t]he homestead as created, defined, and limited by law[,]" N.D.C.C. § 28-22-02(7), and "[a]ny housetrailer or mobile home occupied as a residence by the debtor or the debtor's family[,]" N.D.C.C. § 28-22-02(10).  The amount of real property that  may be taken as a homestead exemption is set forth in section 47-18-01:

> The homestead of any person, whether married or unmarried, residing in this state shall consist of the land upon which the claimant resides, and the dwelling house on that land in which the homestead claimant resides, with all its appurtenances, and all other improvements on the land, the total not to exceed eighty thousand dollars in value, over and above liens or encumbrances or both. The homestead shall be exempt from judgment lien and from execution or forced sale, except as otherwise provided in this chapter. In no case shall the homestead embrace different lots or tracts of the land unless they are contiguous.

N.D.C.C. § 47-18-01. The purpose of the homestead exemption is to place a designated homestead out of creditors reach while it is occupied as a home. In re Morlock, 364 B.R. 684, 686 (Bankr. D.N.D. 2006).

5

The trustee first objects to Debtors' claim of their mobile home as exempt under section 28-22-02(1), arguing that the homestead exemption under section 47-18-01 and the residence exemption under section 28-22-02(10) are mutually exclusive.  Debtors conceded this point at the hearing, and the Court therefore sustains the trustee's objection as to the exemption of Debtors' mobile home under section 28-22-02(10).

The trustee also objects to the $105,000 value Debtors placed on their homestead.  At the hearing, Debtors stipulated that the land is worth $750/acre or $120,000. Although Bitz testified that if he owned the property and were selling it he would try to get between $140,000 and $150,000 for it, such a statement is purely speculative.  He was able to say with certainty that the property would easily sell for $120,000.  The Court therefore concludes that the proper value of Debtors' homestead is  $120,000, and the trustee's objection is sustained.

B.      Bad Faith

Bankruptcy debtors have a duty to disclose all legal and equitable interests in property. 11 U.S.C. § 521.   Bankruptcy Rule 1009 specifies in part that "[a] voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed." Fed. R. Bankr. Pro. 1009.   Maximization of exemptions, especially the homestead exemption, is a fundamental policy of the Bankruptcy Code.  Ladd v. Ries (In re Ladd), 450 F.3d 751, 755 (8th Cir. 2006).

The right to freely amend is not absolute, however, and can be tempered by the actions of the debtor or the consequences to the creditors.  Kaelin v. Bassett (In re Kaelin), 308 F.3d 885, 889 (8th Cir. 2002). Bad faith on the part of the debtor or prejudice to creditors can eliminate a debtor's right to amend exemptions.  Id.  Bad faith is determined by an examination of the totality of the

6

circumstances.  Id.  When it is discovered that a debtor has attempted to hide an asset, it will generally support a finding of bad faith.  Id. at 890.  The trustee has the burden of establishing bad faith by a preponderance of the evidence. Fed. R. Bankr. P. 4003(c); see also Grogan v. Garner, 498 U.S. 279 (1991).

The trustee argues that the following facts demonstrate Debtors' bad faith in amending their schedules: 1) Debtors would not sell their homestead for $120,000 or more because it keeps Lonnie Lundstrom from returning to alcoholism; 2) Debtors did not initially disclose the horses because of their emotional attachment to them; 3)  Debtors only amended their schedules upon the trustee's discovery of assets (horses) or an asset's true value (homestead); and 4) Debtors decreased the value of the horses.

Debtors initially valued their homestead property at $80,000.  Although Lonnie Lundstrom was once verbally offered $120,000 for the property by an acquaintance over coffee, such an informal offer does not establish the property's value.  Further, the fact that Debtors amended the value of the property to $105,000 after the trustee's objection does not make the amendment in bad faith.  Bachmeier, a real estate broker, testified that the property is worth $105,000.  Debtors ultimately conceded the property is worth $120,000, but that concession was made in light of the opinion of Bitz, another real estate broker.  The evidence simply does not support a finding that Debtors attempted to hide the true value of the property.

Next, it is undisputed that Debtors' horses were property that should have been listed on their initial Schedule B. Debtors knew they had horses, but Lonnie Lundstrom claims he did not notice the horses were not listed when he signed the petition.  Within two weeks of the meeting of the creditors, Debtors disclosed the horses.  See Bauer v. Iannacone (In re Bauer), 298 B.R. at 357 (a

7

debtor's duty of disclosure requires updating schedules as soon as reasonably practical after he or she becomes aware of any inaccuracies or omissions). Debtors did not claim the horses as exempt for another two months, but during those two months, Debtors substituted their attorney. Debtors amended their schedules, reducing the value of the horses from $200 each to $35 each and claiming them as exempt. Explaining the reduction in value, Lonnie Lundstrom testified that the horse killing market plants have closed throughout the United States rendering the horses essentially worthless. The trustee offered no evidence to dispute the value of the horses. Considering the totality of the circumstances, the trustee failed to carry his burden of proving by a preponderance of the evidence that Debtors acted in bad faith. The objection on this basis is therefore overruled.

Based on the foregoing, the objection lodged by Trustee Michael L. Wagner to the claimed exemptions of Debtors Lonnie L. and Delores J. Lundstrom is SUSTAINED in part and OVERRULED in part.

**SO ORDERED.**

Dated this January 28, 2009.

**WILLIAM A. HILL, JUDGE**
**U.S. BANKRUPTCY COURT**

8